**BILLY J. WILLIAMS, OSB # 901366**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB # 054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
sean.martin@usdoj.gov
Telephone: (503) 727-1010
      Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **KLAMATH SISKIYOU WILDLANDS CENTER**, *et al.*, | Case No. 1:17-cv-00997-CL |
| Plaintiffs, | **DEFENDANTS' OBJECTIONS TO REPORT & RECOMMENDATION** |
| v. | |
| **BUREAU OF LAND MANAGEMENT**, and **INTERIOR BOARD OF LAND APPEALS**, | |
| Defendants, | |
| and | |
| **MURPHY COMPANY,** | |
| Defendant-Intervenor. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

SUMMARY OF ARGUMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................ 2

    I.    Overview of the Lower Grave project and its surroundings .............. 2

    II.    The Lower Grave project occurs on lands formally legislated and zoned for timber harvest ................................................................ 3

    III.    The administrative and public-review process for the Lower Grave project ...................................................................................... 5

    IV.    Proceedings in this Court ...................................................................... 7

STATUTORY BACKGROUND ............................................................................ 8

STANDARD OF REVIEW ............................................................................ 9

    I.    Judicial Review under the Administrative Procedure Act ................ 9

    II.    The District Judge's Review of the R&R .......................................... 10

ARGUMENT ...................................................................................................... 11

The R&R erred in finding that BLM failed to consider an adequate range of alternatives under NEPA ................................................................ 11

    I.    Legal framework ................................................................................ 11

    II.    The R&R erred regarding the range of NEPA alternatives ............ 12

        A. The cornerstone of the R&R's analysis is in error because it misconstrues the NEPA purpose of a no-action alternative ........... 12

        B. The R&R erred in finding that detailed discussion of an Ecological Forestry alternative would have satisfied NEPA requirements ...................................................................................... 15

i

# TABLE OF CONTENTS, Cont'd

1.  Plaintiffs' Ecological Forestry alternative is inconsistent with BLM's governing framework for timber harvest on the Lower Grave lands ........................................................................ 15

2.  The R&R erred in finding Ecological Forestry was a reasonable alternative, given Plaintiffs' own position regarding Ecological Forestry ....................................................... 21

    a.  Plaintiffs have made the legal representation that Ecological Forestry is unauthorized under the 1995 Medford Resource Management Plan that governed the Lower Grave project .................................................. 21

    b.  Plaintiffs have made legal representations to this Court that BLM's use of Ecological Forestry is controversial and experimental rather than routine timber management ......... 23

C.  The R&R erred because the Ecological Forestry alternative differed from BLM's alternative for only a small fraction of lands, and because its findings were incorrect on fire risks ........... 25

CONCLUSION .............................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*Agdaagux Tribe of King Cove v. Jewell*, 128 F. Supp. 3d 1176
(D. Alaska 2015) ............................................ 13

*Bering Strait Citizens for Responsible Resource Dev. v. U.S. Army
Corps of Eng'rs*, 524 F.3d 938 (9th Cir. 2008) ............................. 12, 16, 24-25

*Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452 (9th Cir. 1983) ......... 10

*California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp. 2d 874
(N. D. Cal.2006) ............................................ 13

*Ctr. for Biological Diversity v. National Highway Traffic Safety
Admin.*, 538 F.3d 1172 (9th Cir. 2008) ............................................ 8

*Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893 (9th Cir. 2012) ............ 11

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633
(9th Cir. 2010) ............................................ 14

*Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*,
655 F.3d 1000 (9th Cir. 2011) ............................................ 9

*Deer Creek Valley Natural Resources Conservation Ass'n v. BLM*,
No. 1:12-cv-1596-CL, 2014 WL 458288 (D. Or. Feb. 4, 2014) ......... 17, 24, 25

*Dep't of Transp. v. Public Citizen*, 541 U.S. 752 (2004) .................................... 9

*Earth Island Institute v. U.S. Forest Service*, 697 F.3d 1010
(9th Cir. 2012) ............................................ 15

*Fairbank v. Underwood*, 986 F. Supp. 2d 1222 (D. Or. 2013) .................... 22-23

*Forest Guardians v. U.S. Forest Service*, 329 F.3d 1089 (9th Cir. 2003) ........ 10

# TABLE OF AUTHORITIES, Cont'd

*Friends of Southeast's Future v. Morrison*, 153 F.3d 1059 (9th Cir. 1998) .... 14

*Headwaters, Inc. v. BLM*, 914 F.2d 1174 (9th Cir. 1990) ............................... 3-4

*Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072 (9th Cir. 2006) ................... 9

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (en banc) ............. 9-10

*N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.,*
   545 F.3d 1147 (9th Cir. 2008) ........................................................... 11

*Native Ecosystems Council v. U.S. Forest Service*, 428 F.3d 1233
   (9th Cir. 2005) ..................................................................... 11, 14-15

*Native Ecosystems Council v. Weldon*, 697 F.3d. 1043 (9th Cir. 2012) ........... 18

*Oregon Natural Desert Ass'n v. Shuford,* 2007 WL 1695162
   (D. Or. June 8, 2007) ....................................................................... 20

*Oregon Wild v. BLM*, No. 6-14-cv-110-AA, 2015 WL 1190131
   (D. Or. March 14, 2015) ............................................................. 23, 24

*O'Neal v. United States*, 814 F.2d 1285 (9th Cir. 1987) ................................. 3

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ...... 22

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989) ................. 8

*San Luis & Delta-Mendota Water Auth. v. Jewell,*
   747 F.3d 581 (9th Cir. 2014) ............................................................. 9

*United States v. Bernhardt*, 840 F.2d 1441 (9th Cir. 1988) ............................ 10

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978) .......... 14

*Wilderness Society v. Tyrell*, 918 F.2d 813 (9th Cir. 1990) ............................. 14

*Wilson v. Cox*, 191 F. Supp. 3d 1172 (D. Or. 2016) ...................................... 23

# TABLE OF AUTHORITIES, Cont'd

## STATUTES

5 U.S.C. § 706(2)(A) ................................................................. 9

28 U.S.C. § 636(b) ................................................................... 10

28 U.S.C. § 636(b)(1) ............................................................... 10

42 U.S.C. § 4321 ...................................................................... 8

42 U.S.C. § 4332(2)(E) ............................................................ 11

43 U.S.C. § 2601 ...................................................................... 3

## RULES

Fed. R. Civ. P. 72(b)(3) ............................................................ 10

Fed. R. Evid. 801(d)(2) ............................................................ 23

## REGULATIONS

40 C.F.R. § 1501.4 ................................................................... 8

40 C.F.R. § 1501.4(e) ............................................................... 9

40 C.F.R. § 1508.9 ................................................................. 11

40 C.F.R. § 1508.9(a)(1) ........................................................... 8

40 C.F.R. § 1508.9(b) ............................................................... 8

40 C.F.R. § 1508.13 ................................................................. 9

43 C.F.R. § 4.403(a) ................................................................. 7

43 C.F.R. § 5003 ..................................................................... 6

Defendants make the following limited objections to the Magistrate's Report and Recommendation ("R&R") regarding Plaintiffs' challenge to the Bureau of Land Management's Lower Grave Vegetation Management Project ("the project" or "Lower Grave").   ECF 57.   As Defendants explain below, this Court should decline to adopt the R&R with regard to Plaintiffs' claim regarding the National Environmental Policy Act ("NEPA") range of alternatives.   Defendants do not object to the remainder of the R&R, and this Court should adopt those portions of the R&R.

## SUMMARY OF ARGUMENT

In several critical respects, the R&R erred in recommending summary judgment to Plaintiffs on their NEPA range-of-alternative claim.   First, the R&R's analysis was premised on a legal error regarding the underlying purpose of BLM's "no-action" alternative, tainting the entire analysis.

Second, the R&R failed to account for the fact that Plaintiffs' Ecological Forestry alternative conflicted with BLM's underlying forestry management policies and prescriptions for the Lower Grave area.   Further, the R&R failed to appropriately account for Plaintiffs' own legal position regarding Ecological Forestry.   Plaintiffs have made the legal representation in other southern Oregon litigation that BLM has no authority to implement an Ecological Forestry alternative under the governing BLM Resource

Page 1-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

Management Plan.   In addition, Plaintiffs have made legal representations to this Court that Ecological Forestry is an untested and highly controversial and uncertain practice, a far cry from the routine Lower Grave project BLM planned.

Third, the R&R erred because BLM's proposed project was similar in most respects to Ecological Forestry and Plaintiffs' alternative called for different management for only 6% of the acreage proposed for forestry treatments.   Finally, the R&R erred because there is no support for a finding that the Ecological Forestry alternative is free of the short-term fire risks that are inherent in other forestry management approaches.

For these reasons, this Court should sustain Defendants' limited objections, and decline to adopt the R&R findings and recommendation with regard to the NEPA range of alternatives.

## FACTUAL BACKGROUND

### I.    Overview of the Lower Grave project and its surroundings.

The Bureau of Land Management ("BLM") authorized the Lower Grave project on lands specifically allocated for timber harvest by the Oregon and California Lands Act and by the 1994 Northwest Forest Plan.

The project occurs within a portion of the Grave Creek watershed, north of Grants Pass and east of I-5 and the community of Sunny Valley.

Page 2-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

R&R at 2; AR 9829.   Its purpose is to implement forest management activities that improve forest health and vigor and reduce wildfire danger while providing a sustainable supply of timber and other forest commodities. R&R at 2; AR 9833.

The project authorizes commercial timber harvest of 582 acres, including regeneration harvest on 62 acres.   AR 2891, 2892.   The project's commercial thinning occurs in "previously entered plantations that have typically seen multiple management treatments."   R&R at 2; AR 9840.   The project also authorizes non-commercial hazardous fuels reduction treatments of another 378 acres.   AR 2891.   The project also authorizes construction of 0.31 miles of permanent routes and temporary construction or reconstruction of just over 2 miles of additional routes.   R&R at 2; AR 2885.

## II.  The Lower Grave project occurs on lands formally legislated and zoned for timber harvest.

The project occurs on lands governed by the Oregon and California Lands Act ("O & C Act"), 43 U.S.C. § 2601 *et seq*.   R&R at 2; AR 2908.   Such lands are intended primarily "for timber production to be managed in conformity with the provision of sustained yield."   *O'Neal v. United States*, 814 F.2d 1285, 1287 (9th Cir. 1987) (per curiam).   "[T]he O & C Act envisions timber production as a dominant use."   *Headwaters, Inc. v. BLM*, 914 F.2d

Page 3-   **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

1174, 1184 (9th Cir. 1990).

Eighty-six percent (86%) of the project's acreage is on "Matrix" lands.
R&R at 2; AR 2892.   Matrix lands were designated by the 1994 Northwest
Forest Plan and comprise the area "in which most timber harvest and other
silvicultural activities will be conducted."   AR 25980.   The Northwest Forest
Plan recognizes that Matrix lands were designated to emphasize "the
economic and social benefit of timber harvest."   R&R at 3; AR 26023.

The Lower Grave project was developed and designed under the 1995
Medford Resource Management Plan.   AR 9834.   *See* AR 9838 (stating that
the purpose of the proposed Lower Grave action is "to meet BLM's obligation
to implement" the 1995 Resource Management Plan, including implementing
the O&C Act and managing land allocations under the Plan).

Under the 1995 Plan governing the project, BLM's primary
management objective for Matrix lands is "to produce a sustainable supply of
timber and other forest commodities to provide jobs and contribute to
community stability."   R&R at 3; AR 2900, 24750.   The Plan also directs
that BLM "[c]onduct timber harvest" on Matrix lands within the Plan's
designated General Forest Management Area.   AR 24750.   The Lower
Grave project involves timber harvest within the Northern General Forest
Management Area, but no harvest within the Southern General Forest

Page 4-    **Federal Defendants' Objections to Report &
Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
BLM*, Case No. 1:17-cv-00997-CL

Management Area.   AR 10037, 9830 (color map in EA).

### III.    The administrative and public-review process for the Lower Grave project.

In February 2013, BLM provided the public with initial information about the proposed project and held a public meeting and field trip.   R&R at 3; AR 9834, 15129-34, 15016-43 (slide presentation from public meeting).   As originally proposed, the project would have involved more than 1,900 acres of thinning and other forest treatments, including about 120 acres of regeneration harvest.   R&R at 3; AR 15132.   BLM requested, received, and responded to the initial public comments about the project.   R&R at 3; AR 9834, 10044-56 (BLM responses to initial comments). Ultimately, BLM decided to reduce to 62 acres the project's regeneration harvest.   AR 2892.

In January 2015, BLM published an Environmental Assessment ("EA") for the project and provided the public a 45-day comment period.   R&R at 3; AR 9821-22.   The 240-page EA included analysis and disclosure of the environmental effects of both a "no-action" alternative and the proposed action.   R&R at 3; AR 9862-970. The EA also briefly considered the Grave Creek Citizens' Alternative for the project along with another project alternative.   AR 9835-36.

BLM found in the EA that the proposed action would "improve the

growth and vigor of retained trees" and "retain and promote desired stand characteristics" including "legacy trees."   AR 9879.   Overall, the proposed action would "improve the overall resiliency" in the planning area and facilitate long-term development of mature forests.   AR 9880.

According to the EA, the proposed action would also "reduce fire hazard within the landscape."   AR 9888-89.   As BLM noted, fire suppression in the planning area has negatively affected forest density by suppressing the natural thinning process, decreasing stand productivity due to increased vegetation, and altering stand structure.   AR 9867.   "Current conditions coupled with the exclusion of fire has facilitated the likelihood of large, older trees dying not only from fire but also insects or drought due to increased tree densities and reduced tree vigor."   *Id*.

In July 2015, BLM issued a Decision Record for the project that authorized timber harvest and forest treatments on a total of 960 acres, about half of what BLM had initially proposed.   R&R at 3; AR 2887-94. BLM also formally responded to public comments on the EA, and issued a Finding of No Significant Impact ("FONSI").   R&R at 3; AR 2895-934.

In August 2015, Plaintiffs filed an administrative protest of the Decision Record under 43 C.F.R. § 5003.    R&R at 3; AR 2533-80.   In April 2017, BLM issued a 42-page decision that denied Plaintiffs' protest.   R&R at

Page 6-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

3; AR 268-310.

In May 2017, Plaintiffs filed an administrative appeal of BLM's protest decision with the Interior Board of Land Appeals ("IBLA").   R&R at 3-4; AR 157-95.   On July 3, 2017, IBLA issued a decision affirming BLM's decision on its merits.   R&R at 4; AR 20-39.   The IBLA decision constituted "final agency action" for purposes of review under the Administrative Procedure Act.   43 C.F.R. § 4.403(a).

## IV.    Proceedings in this Court.

On June 27, 2017, Plaintiffs filed their initial complaint against BLM in this Court.   ECF 1.   On November 7, 2017, Plaintiffs filed a first amended complaint to name IBLA as a defendant.   ECF 14.   Plaintiffs raised several NEPA claims and a claim under the Federal Land Policy and Management Act.   *Id.*   On February 9, 2018, Defendants lodged the administrative records.   R&R at 4; ECF 26. On October 26, 2018, Magistrate Judge Clarke heard oral argument on the parties' cross-motions for summary judgment.   ECF 54.   On February 20, 2019, Judge Clarke issued an R&R that recommended granting summary judgment in favor of Plaintiffs regarding their NEPA range of alternatives claim but in favor of Defendants regarding Plaintiffs' remaining three claims. ECF 57.

## STATUTORY BACKGROUND

NEPA, 42 U.S.C. § 4321 *et seq.*, has a twofold purpose: (1) to ensure that agencies carefully consider information about significant environmental impacts; and (2) to guarantee relevant information is available to the public. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989); *Ctr. for Biological Diversity v. National Highway Traffic Safety Admin.*, 538 F.3d 1172, 1185 (9th Cir. 2008).   NEPA is a procedural statute and it neither compels particular results nor imposes substantive environmental obligations upon federal agencies. *Robertson*, 490 U.S. at 350-351.

Under NEPA, an agency may prepare an EA to determine whether a proposed action would precipitate a significant impact on the environment requiring an Environmental Impact Statement ("EIS"). 40 C.F.R. § 1501.4. NEPA regulations define an EA as "a concise public document . . . that serves to [b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact [FONSI]." 40 C.F.R. § 1508.9(a)(1).   An EA will contain a "brief" discussion of environmental effects.   40 C.F.R. § 1508.9(b).

If an agency determines that an EIS is not required after preparing an EA, then the agency must issue a FONSI.   The FONSI briefly states the reasons why the proposed agency action will not have a significant impact

Page 8-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

on the human environment.   40 C.F.R. §§ 1501.4(e), 1508.13.   *See generally*

*Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 756-58 (2004).

**STANDARD OF REVIEW**

**I.     Judicial Review under the Administrative Procedure Act.**

Judicial review in this action is governed by the Administrative

Procedure Act ("APA").   R&R at 4.   Under the APA, a reviewing court will

uphold an agency decision unless it finds that the decision was "'arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law.'"

*Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000,

1005 (9th Cir. 2011), *quoting* 5 U.S.C. § 706(2)(A).   This standard is "highly

deferential, presuming the agency action to be valid and [requires] affirming

the agency action if a reasonable basis exists for its decision."   *Kern Cnty.*

*Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (citation omitted).

*Accord San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601

(9th Cir. 2014).

An agency decision is arbitrary and capricious "only if the agency relied

on factors Congress did not intend it to consider, entirely failed to consider an

important aspect of the problem, or offered an explanation that runs counter

to the evidence before the agency or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise."   *Lands*

Page 9-     **Federal Defendants' Objections to Report &
            Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
            BLM*, Case No. 1:17-cv-00997-CL

*Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc) (internal quotation omitted).

This Court's role in reviewing an agency's NEPA analysis under the APA is to determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* "An agency's actions need not be perfect; [courts] may only set aside decisions that have no basis in fact, and not those with which [courts] disagree." *Forest Guardians v. U.S. Forest Service*, 329 F.3d 1089, 1099 (9th Cir. 2003).

## II.     The District Judge's Review of the R&R.

When a party objects to any portion of an R&R, the district judge reviews that portion de novo. 28 U.S.C. § 636(b)(1); *United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988). When a party does not file objections to portions of an R&R, the district judge need not undertake de novo review of those portions. *Id.*; *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

In resolving objections to an R&R, the district judge "may receive further evidence" or may remand to the magistrate for further proceedings. Fed. R. Civ. P. 72(b)(3). *See also* 28 U.S.C. § 636(b).

Page 10-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

## ARGUMENT

**The R&R erred in finding that BLM failed to consider an adequate range of alternatives under NEPA.**

### I.    Legal framework.

NEPA mandates that federal agencies "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E).    "[A]n agency's obligation to consider alternatives under an EA is a lesser one than under an EIS." *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 915 (9th Cir. 2012) (internal quotation omitted).    "[W]ith an EA, an agency is only required to include a brief discussion of reasonable alternatives."    *Id.* (quoting *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008).

Although an EA must discuss one or more action alternatives, such discussion need only be "brief."    40 C.F.R. § 1508.9; *see also Native Ecosystems Council v. U.S. Forest Service*, 428 F.3d 1233 (9th Cir. 2005).    An agency's obligation to consider alternatives in an EA may be satisfied by an agency's detailed consideration of only two alternatives, including the no-action alternative and the agency's preferred action alternative.    *Id.* at 1246 (NEPA "does not impose a numerical floor on alternatives to be considered").

Page 11-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

For an EA, an agency need not discuss "alternatives similar to alternatives actually considered, or alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for management of the area." *Bering Strait Citizens for Responsible Resource Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 955 (9th Cir. 2008) (internal citation omitted).

## II.    The R&R erred regarding the range of NEPA alternatives.

The R&R erred in multiple respects in finding that BLM was irrational in its range of NEPA alternatives.   R&R at 9-15.   The record indicates that IBLA reached a rational finding under the APA that BLM analyzed an adequate range of alternatives.   AR 30-31.   BLM considered in detail its proposed action and a no-action alternative.   AR 9837-61.   BLM also discussed other alternatives, including the Grave Creek Citizens' Alternative, and explained why it was not assessing them in further detail.   AR 273-74, 280-81 (discussing Ecological Forestry), 2870-71, 2873-74 (discussing Ecological Forestry and dry-forest restoration approaches), 9836.

### A. The cornerstone of the R&R's analysis is in error because it misconstrues the NEPA purpose of a no-action alternative.

As the basis of its NEPA-alternatives analysis, the R&R found that BLM's no-action alternative was "unfeasible" and "not in fact reasonable." R&R at 11. Therefore, according to the R&R, the requisite NEPA "brief

Page 12-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

discussion of reasonable alternatives" did not occur and BLM did not satisfy

NEPA. *Id*. *See id*. at 9 (faulting BLM for considering an unreasonable no-

action alternative).

The R&R is in error on this fundamental point, undermining the

entirety of its NEPA-alternatives analysis.   That is because the purpose of a

no-action alternative is not to establish a "reasonable" project alternative but

instead to define the status quo for purposes of establishing an

environmental baseline for comparison of the effects of any "action"

alternative.   "There is no requirement that the No Action Alternative fulfill

the purpose of a proposed project." *Agdaagux Tribe of King Cove v. Jewell*,

128 F. Supp. 3d 1176, 1195 (D. Alaska 2015).

The R&R misconstrued the core purpose of a no-action alternative.

The "'no action alternative generally does not satisfy the proposed action's

purpose and need," but its inclusion is "required by NEPA as a basis for

comparison.'" *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp.

2d 874, 905 (N. D. Cal.2006) (quoting Ronald E. Bass, Albert I. Herson &

Kenneth M. Bogdan, The NEPA Book: A Step–by–Step Guide on How to

Comply with the National Environmental Policy Act 95 (2d ed. 2001)).

According to the Ninth Circuit, "A no action alternative . . . allows

policymakers and the public to compare the environmental consequences of

Page 13-    **Federal Defendants' Objections to Report &
Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
BLM*, Case No. 1:17-cv-00997-CL

the status quo to the consequences of the proposed action.   The no action alternative is meant to 'provide a baseline against which the action alternative . . . is evaluated." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010) (internal quotation omitted).   *See also Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1065-66 (9th Cir. 1998).

The R&R legally erred in faulting BLM for its no-action alternative and finding that the agency therefore needed to consider a third alternative in detail in order to comply with NEPA.   The Supreme Court has cautioned courts "against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978).   "In the absence of constitutional constraints or extremely compelling circumstances a court may not fashion procedural obligations beyond those explicitly enumerated in the pertinent statutes." *Wilderness Society v. Tyrell*, 918 F.2d 813, 816 (9th Cir. 1990) (citing *Vermont Yankee*).

Here, given its erroneous understanding of the point of a no-action alternative, the R&R fashioned a novel NEPA procedural obligation that BLM's EA must consider at least two action alternatives.   This conflicts with Ninth Circuit law.   *See Native Ecosystems*, 428 F.3d at 1246 (NEPA "does

Page 14-   **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

not dictate the minimum number of alternatives that an agency must consider"); *Earth Island Institute v. U.S. Forest Service*, 697 F.3d 1010, 1022 (9th Cir. 2012) (noting that post-*Native Ecosystems*, "we are aware of no Ninth Circuit case where an EA was found arbitrary and capricious when it considered both a no-action and preferred action alternative").

The R&R's faulty premise undermines the R&R's entire analysis of the NEPA-alternatives claim.   For these reasons, this Court should decline to adopt the R&R.

### B. The R&R erred in finding that detailed discussion of an Ecological Forestry alternative would have satisfied NEPA requirements.

The R&R further erred in finding that discussion of an Ecological Forestry alternative in Lower Grave "would have satisfied NEPA requirements for consideration of reasonable alternatives."   R&R at 11.

### 1. Plaintiffs' Ecological Forestry alternative is inconsistent with BLM's governing framework for timber harvest on the Lower Grave lands.

The R&R erred, because Plaintiffs' Ecological Forestry alternative is inconsistent with BLM's governing Resource Management Plan forestry management framework.   BLM was not required by NEPA to consider that alternative in detail, because it runs counter to the basic policy objectives for management of the Northern General Forest Management Area ("NGFMA")

Page 15-   **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

encompassing the Lower Grave lands.   *See Bering Strait*, 524 F.3d at 955.

Under the governing 1995 Medford Resource Management Plan, NGFMA

lands are managed for a "high level of sustained timber productivity," with

an "[e]mphasis . . . on use of intensive forest management practices and

investments."   AR 24899.

Plaintiffs' Ecological Forestry alternative is a Southern General Forest

Management Area ("SGFMA") approach.   *Se*e ECF 14, First Amended

Complaint ¶¶ 39, 76a).   Plaintiffs' alternative would apply the SGFMA

forestry prescription, rather than the NGFMA prescription that actually

governs these lands.   But NEPA does not mandate that BLM consider, in

detail, an alternative that is tailored for lands, goals, and prescriptions that

are not part of this project area.   *See* ECF 14, Plaintiffs' First Amended

Complaint ¶ 33 ("The difference between management of these two areas is

significant.").   In contrast to intensive forestry on NGFMA lands, forestry on

SGFMA lands is "designed to mimic natural ecological processes."   AR

24903-04.

Plaintiffs' SGFMA-based alternative calls for significantly different

management that conflicts with the basic Resource Management Plan policy

objectives for NGMFA management.   As IBLA noted, Plaintiffs did not point

to any information undermining the NGFMA designation or justifying a

Page 16-    **Federal Defendants' Objections to Report &**
            **Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.*
            *BLM*, Case No. 1:17-cv-00997-CL

departure from that designation.    AR 36 (noting Plaintiffs' "conclusory . . .

disagreement with BLM's experts" regarding the NGFMA lands).    This

Court should defer to BLM's interpretation and application of its own land

management allocations and directives. *See Deer Creek Valley Natural*

*Resources Conservation Ass'n v. BLM*, No. 1:12-cv-1596-CL, 2014 WL 458288

* 6 (D. Or. Feb. 4, 2014).

As BLM disclosed in the EA, the project does not involve management

of any SGFMA lands.    AR 10037, 9830 (color map in EA).    The project

instead involves management on NGFMA lands.    BLM accordingly planned

the project under its 1995 Medford Resource Management Plan's standards

for NGFMA lands, and specifically found that the project's regeneration

harvest "would adhere to the [Resource Management Plan] prescription . . .

for North GFMA."    AR 9842.    BLM's silviculturist verified that NGFMA

management was appropriate "based on stand data and site-specific field

review."    AR 306.[1]    These findings merit significant deference.    "A court

generally must be at its most deferential when reviewing scientific judgments

_____

[1] A year before the Lower Grave EA was even published, BLM told the public
that almost all of the BLM lands in the Lower Grave planning area were
within the NGFMA land designation.    AR 15129. BLM also informed the
public that it was not planning any regeneration harvest in SGFMA lands.
AR 15132.

Page 17-    **Federal Defendants' Objections to Report &
Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
BLM*, Case No. 1:17-cv-00997-CL

and technical analyses within the agency's expertise under NEPA." *Native*

*Ecosystems Council v. Weldon*, 697 F.3d. 1043, 1051 (9th Cir. 2012) (internal

quotation omitted).

Unlike Plaintiffs' Ecological Forestry alternative, BLM's proposed

Lower Grave alternative was also consistent with the 1995 Medford Resource

Management Plan's NGFMA prescriptions regarding how many trees to leave

per acre in regeneration harvest.   In NGFMA lands, under the Resource

Management Plan, regeneration harvest would leave 6-8 trees per acre.   AR

24786; ECF 14, Plaintiffs' first amended complaint at ¶ 34.   By contrast, in

SGFMA lands, regeneration harvest would leave 16-25 trees per acre.   AR

24786; ECF 14 at ¶ 33.

Applying Ecological Forestry rather than regeneration harvest to 62

acres of NGFMA lands might leave more trees per acre, but would conflict

with the forestry prescriptions in the governing Resource Management Plan

and the overall "intensive" forest management approach central to NGFMA

lands.   Further, as BLM found in its expertise, leaving more trees in

regeneration-harvest areas (via thinning akin to Ecological Forestry) would

have "minimal effects for growth and vigor of the residual trees."   AR 11894.

Such thinning would not suit the project, given its stated NEPA goals to

"maintain stand vigor" and "increase long-term tree growth."   AR 9833,

Page 18-    **Federal Defendants' Objections to Report &
            Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
            BLM*, Case No. 1:17-cv-00997-CL

12987.   NEPA therefore did not mandate that BLM consider that alternative in detail.

The R&R therefore erred to the extent it found fault with the regeneration harvest or found that an SGFMA alternative was required for rational analysis of a NGFMA project.[2]   *See* R&R at 12 (noting that "BLM's proposed regeneration harvest would leave only 6-8 trees per acre").

Nor was Plaintiffs' Ecological Forestry a reasonable NEPA alternative, because it conflicts with BLM's rational interpretation of its Resource Management Plan's age-class prescriptions for NGFMA regeneration harvest. In Lower Grave, BLM proposed regeneration harvest for forest stands with an average age of 130 years.   AR 9869.   This matches the Plan's allowance for regeneration harvest on NGFMA lands.   The Plan prescribes that regeneration harvest is appropriate for NGFMA forest stands *over* 120 years of age, while commercial thinning is appropriate for NGFMA forest stands *under* 120 years of age.   AR 24900-01.   As BLM interpreted this Resource Management Pan, "[s]tands that are 120 should be looked at for regeneration

---

[2] To any extent the R&R credited Plaintiffs' representation that regeneration harvest is an "archaic practice that undermines the agency's current management objective," that is error, because Plaintiffs ignored the project's governing Resource Management Plan's direction that regeneration harvest should occur on *both* NGFMA and SGFMA lands.   *See* ECF 36 at 6 (Plaintiffs' summary judgment reply brief).

Page 19-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

harvest . . . as opposed to commercial thinning."   AR 11894.

The Ecological Forestry alternative conflicts with this rational BLM interpretation of its Resource Management Plan prescriptions, because it is premised on inapplicable SGFMA prescriptions that restrict the use of regeneration harvest in stands under 150 years of age.   AR 24906.   BLM was not required to consider an alternative that would take the project outside the Resource Management Plan management framework – NGFMA – that BLM designated for the Lower Grave area.   *See Oregon Natural Desert Ass'n v. Shuford*, 2007 WL 1695162 at * 13 (D. Or. June 8, 2007).

Plaintiffs' Ecological Forestry alternative is a SGFMA approach that is a mismatch with BLM's underlying NGFMA forestry goals and prescriptions for the area.   The Ecological Forestry alternative would require BLM to pretend its land classifications did not apply and plan forestry treatments contrary to the goals and prescriptions that accompany the project area's NGFMA designation.

Therefore, the R&R erred in finding Ecological Forestry was a reasonable alternative that BLM was required to consider in detail.   For these reasons, this Court should decline to adopt the R&R.

### 2. The R&R erred in finding Ecological Forestry was a reasonable alternative, given Plaintiffs' own position regarding Ecological Forestry.

The R&R also erred in finding Ecological Forestry a reasonable alternative, given Plaintiffs' public representations regarding that forestry approach.

### a. Plaintiffs have made the legal representation that Ecological Forestry is unauthorized under the 1995 Medford Resource Management Plan that governed the Lower Grave project.

The R&R declined to take into account that Plaintiffs have taken the legal position that Ecological Forestry is an illegal approach for BLM to undertake under the Resource Management Plan that governed the Lower Grave project.   In recent administrative litigation against another BLM timber project in southern Oregon, Plaintiffs represented that BLM lacked authority under the same 1995 Medford Resource Management Plan to consider or implement an Ecological Forestry alternative.   ECF 34-1 at 9. Under Plaintiffs' representations, because the Plan has no references to Ecological Forestry, and because the Plan's underlying environmental review does not analyze this approach, BLM could not appropriately consider such a project alternative. *Id.*

By Plaintiffs' own legal representations, considering an Ecological

Page 21- **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM,* Case No. 1:17-cv-00997-CL

Forestry alternative was not a reasonable alternative for Lower Grave. That is because, according to Plaintiffs, that alternative would have first required BLM to table the project until the agency completed "an appropriate programmatic NEPA analysis and the issuance of [a new Resource Management Plan] that authorizes ecological forestry for the Medford District." *Id*.

Therefore, in the Lower Grave project, Plaintiffs' demand for an Ecological Forestry alternative is disingenuous rather than a bona fide NEPA alternative. That is because Plaintiffs have made public legal representations that Ecological Forestry is an <u>unauthorized</u> approach for BLM timber projects under the 1995 Medford Resource Management Plan.

In a footnote, the R&R rejected Defendants' argument regarding Plaintiffs' legal representations regarding the Pan, because those representations were outside the administrative record. R&R at 13 n.2. But this Court should take them into account via judicial notice in assessing the threshold validity of Plaintiffs' conflicting legal argument here. It is well-settled that this Court may take judicial notice of court filings and other matters of public record because they are readily verifiable. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1226 (D. Or. 2013) (taking judicial

Page 22-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

notice of extra-record court filings, because those documents are matters of

public record and their authenticity cannot be questioned).    *See also* Fed. R.

Evid. 801(d)(2); *Wilson v. Cox*, 191 F. Supp. 3d 1172, 1181 n.2 (D. Or. 2016)

(noting that even settlement communications are admissible "in considering

the appropriateness" of judicial estoppel).

For these reasons, this Court should decline to adopt the R&R.

> **b. Plaintiffs have made legal representations to this Court that BLM's use of Ecological Forestry is controversial and experimental rather than routine timber management.**

The R&R also erred because it ignored additional representations from

Plaintiffs regarding Ecological Forestry:    Plaintiffs have argued to this Court

that Ecological Forestry is a controversial experimental approach requiring

extensive NEPA reviews under an EIS rather than an EA.    *Oregon Wild v.*

*BLM*, No. 6-14-cv-110-AA, 2015 WL 1190131 (D. Or. March 14, 2015).

Lower Grave was not intended as an experimental venture into new

forestry techniques.    *See* AR 9832 (noting that project was designed "to meet

BLM's obligation to implement" the 1995 Resource Management Plan and

"address the primary needs for lands" within the project planning area).    For

Lower Grave, BLM found that the "treatments proposed" are "typical of forest

management activities that have occurred in the Lower Grave Watershed

and on the Medford District."   AR 10055.   BLM planned to authorize

"routine" forestry activities, on lands that have long been zoned for timber

harvest, with effects "within the scope of those considered" in the 1995

Medford Resource Management Plan.   AR 2922, 2925.

Plaintiffs view Ecological Forestry, by contrast, as an untested pilot

foray into new techniques.   In *Oregon Wild*, two of the instant Plaintiffs

successfully argued that an EIS was required by NEPA for a small BLM

timber project in southern Oregon.   *Id*. at *1, *7-*9.   Plaintiffs'

representation was that Ecological Forestry is a highly controversial

experiment and requires extensive NEPA analysis under an EIS.

An Ecological Forestry alternative was not reasonable in Lower Grave,

because it would have transformed Lower Grave from a routine management

effort into what Plaintiffs say is a highly controversial pilot. Given Plaintiffs'

prior representations of Ecological Forestry to this Court, the prospect of an

Ecological Forestry alternative in Lower Grave was a clear mismatch with

the project's routine nature and therefore not a reasonable alternative.   An

EA need not discuss alternatives "which are infeasible, ineffective, or

inconsistent with the basic policy objectives for management of the area.'"

*Deer Creek Valley Natural Resources Conservation Ass'n v. BLM*, No. 1:12-cv-

1596-CL, 2014 WL 458288 *7 (D. Or. Feb. 4, 2014), citing *Bering Strait*

Page 24-    **Federal Defendants' Objections to Report &
            Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.
            BLM*, Case No. 1:17-cv-00997-CL

*Citizens for Responsible Resource Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 955 (9th Cir. 2008).   By Plaintiffs' own estimation, the alternative they propose here is inherently impracticable; BLM was thus not required to analyze this alternative in detail.

For these reasons, this Court should decline to adopt the R&R.

### C. The R&R erred because the Ecological Forestry alternative differed from BLM's alternative for only a small fraction of lands, and because its findings were incorrect on fire risks.

The R&R also erred in finding that NEPA required detailed review of the Ecological Forestry alternative, because the proposed Lower Grave alternative was, overall, similar to Ecological Forestry and differed for only a small fraction of the project acreage.   In responding to public comments during the NEPA process, BLM rationally found that assessing an Ecological Forestry alternative in detail was not needed.   Akin to Ecological Forestry, BLM's proposed alternative aimed to conserve and improve the survivability of legacy trees, increase the resistance and resilience of forest stands, and accelerate the development of structural complexity.   AR 2874.   *See also* AR 281 (BLM finding that the project proposed Ecological Forestry principles "[w]here appropriate").   An EA need not discuss alternatives "similar to alternatives actually considered."   *Deer Creek,* 2014 WL 458288 at *7 (citation omitted).

Page 25-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM,* Case No. 1:17-cv-00997-CL

As the R&R found, the Ecological Forestry alternative presented a management distinction for only a small fraction – 6% -- of the Lower Grave project.   The R&R found the key difference between BLM's proposed alternative and the Ecological Forestry alternative was with regard to regeneration harvest.   R&R at 12-13.   But the regeneration harvest involves just 6% of the total 1,010 acres of treatments proposed in BLM's NEPA analysis.   AR 2892, 9838-39.   This fractional difference did not mandate that BLM consider in detail a separate Ecological Forestry alternative for just a small portion of the project.

The R&R further erred to the extent it found any differences in fire risk between BLM's proposed alternative and the Ecological Forestry alternative. R&R at 12.   The R&R states that Ecological Forestry would "increase stand resiliency in the face of a fire," R&R at 12 (citing AR 1720).   But BLM's proposed alternative would also do that, AR 2697 & 9888-89, and AR 1720 says nothing about stand resiliency in the face of fire.   Nor is a short-term increase in fire risk unique to regeneration harvest, as BLM found this risk inherent to all the project's forestry prescriptions in that they leave "slash" or forest debris that must be cleared.   AR 9885-86.   Similarly, the project's various prescriptions would envision future treatments to reduce fuel loading.   AR 9886.   The R&R erred to extent it found that such future

Page 26-    **Federal Defendants' Objections to Report & Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v. BLM*, Case No. 1:17-cv-00997-CL

treatments are needed only with regeneration harvest.    AR 9886.    Nor is

there any evidence that an Ecological Forestry alternative could somehow

either eliminate short-term fire risks from the existence of slash or post-

harvest forest debris, or eliminate the need for future treatments to reduce

fuel loading.    There is no evidence that Ecological Forestry differs with

regard to fire risk such that NEPA required that BLM consider it as a stand-

alone alternative.

## CONCLUSION

For these reasons, this Court should sustain Defendants' limited

objections, and decline to adopt the R&R with regard to Plaintiffs' NEPA-

alternatives claim.


Dated this 6th day of March, 2019.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney

Page 27-    **Federal Defendants' Objections to Report &**
**Recommendation**; *Klamath Siskiyou Wildlands Center, et al. v.*
*BLM*, Case No. 1:17-cv-00997-CL